No. 22621.

James L. Knight and C. H. Spaulding *v.* The District Court of the Seventeenth Judicial District, County of Adams, State of Colorado, the Honorable Oyer G. Leary, Judge, and North Valley State Bank, a corporation.

(424 P.2d 110)

Decided February 27, 1967.

DAWSON, NAGEL, SHERMAN & HOWARD, JAMES E. HAUT-ZINGER, for petitioners.

FUGATE & MITCHEM, WILLIAM E. KENWORTHY, for respondents.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

16

NORTH VALLEY STATE BANK, a Colorado banking corporation, brought an action on a promissory note in the district court of the Seventeenth Judicial District against James L. Knight and C. H. Spaulding. Knight and Spaulding were each thereafter personally served with a copy of the complaint and the summons in Salt Lake City, Utah. In response thereto, Knight and Spaulding then filed in the aforementioned district court a motion to dismiss the action on the ground that the court lacked jurisdiction over their person. After hearing, the trial court denied this motion to dismiss, and proceeded to order Knight and Spaulding to file an answer to the complaint.

It was at this juncture that Knight and Spaulding instituted the present original proceeding in this court, contending that the aforementioned district court was about to proceed though it was without jurisdiction over their person. Accordingly, Knight and Spaulding, who will hereinafter be referred to as the petitioners, sought the issuance of a rule to show cause, naming as respondents the district court, the Honorable Oyer G. Leary, a judge thereof, and the North Valley State Bank. A rule to show cause did issue and the several respondents have now filed their answer thereto. Hence, the entire matter now awaits our determination.

The sequence of events out of which this controversy arises is apparently not in any serious dispute. On or about June 9, 1964 the petitioners, and each of them, who were then and are now residents of Utah, personally appeared in Adams County, Colorado, at the office of the North Valley State Bank, hereinafter to be referred to as the Bank, and then and there successfully negotiated a loan from the Bank of the sum of $30,000. As evidence of the loan, a promissory note in the amount of $30,000 was executed by the petitioners and then delivered by them to the Bank in Adams County.

Thereafter, on September 9, 1964 the petitioners executed a renewal note in the same principal amount

as the first note, namely $30,000. The renewal note provided for payments to be made to the Bank at its offices in Adams County. However, the renewal note was executed by the petitioners in Salt Lake City, Utah, and then sent by U.S. Mail to the Bank in Adams County. And it is the fact that the renewal note was executed in Salt Lake City, Utah, that forms the springboard for the present controversy.

As noted, the Bank brought suit in the district court in Adams County for the sum of $22,000. Apparently the petitioners had previously paid the sum of $8,000 on the renewal note. Although the renewal note was a cognovit one, the Bank decided not to proceed under the cognovit provisions in the note, and in any event caused the petitioners in this court — the defendants in the trial court — to be personally served with process in Salt Lake City, Utah. And the issue now to be resolved, then, is whether such service of process gives the trial court jurisdiction over the person of these two petitioners.

1965 Perm. Supp. C.R.S. 1963, 37-1-26, which is sometimes referred to as the long-arm statute, provides in part as follows:

*"Jurisdiction of courts.* — (1) (a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning *any cause of action arising from*:

(b) *The transaction of any business within this state;* * * * *." (Emphasis added.)

The petitioners contend that because the renewal note was executed by them in Salt Lake City, Utah, and then mailed by them to the Bank in Adams County, that the aforementioned statute has no applicability, and that the attempted service of process upon them in Utah is of no effect. This is so, claim the petitioners, for the

reason that the aforementioned statute does not cover the instant factual situation. In other words, according to the petitioners, the claim of the Bank does *not* arise out of any business transacted by them in Colorado. It is alternatively argued that if it be determined that the statute in question does cover the instant factual situation, then the said statute is unconstitutional, as to these petitioners at least, for the reason that it is violative of their rights under the due process clause of the United States Constitution.

It is the basic position of the respondents, however, that under the so-called long-arm statute enacted by the General Assembly in 1965 the aforementioned service of process does give the trial court jurisdiction over the person of these petitioners.

So, the precise question to be resolved, then, is whether the Bank's cause of action does, or does not, "arise from" the transaction by the petitioners of "any business" within the state of Colorado. We hold that the Bank's claim *does* arise from the transaction of "any business" by the two petitioners within this state, and that under the circumstances the service of process was quite properly upheld by the trial court.

It seems evident to us that the petitioners most certainly did transact business within this state. To illustrate, petitioners, and each of them. voluntarily left their place of residence in Utah and made the long journey to Adams County in Colorado. There they very successfully negotiated a loan of $30,000 from the Bank. At this same time and place, the petitioners, in return for this loan, executed and delivered to the Bank their promissory note in the principal amount of $30,000. Surely, it cannot be seriously denied that the petitioners, physically present within the state, *did* transact business — and about $30,000 worth of business — within this state.

Whether the Bank's cause of action arose from the transaction within the state by the petitioners of

the above described "business" is perhaps a bit more difficult problem. But in our view, the Bank's claim did so arise. To hold to the contrary would represent a very narrow and highly technical approach to the entire matter, and would actually result in a "tail-wagging-the-dog" type of situation.

Although the original note is not before us, it apparently was a short term note. In any event, 90 days after the execution of the original note, the petitioners executed a renewal note, but in Salt Lake City, Utah. The renewal note, on its face, states that it is a "renewal" of the original note, which had previously been executed by the petitioners in Adams County. Thereafter, the petitioners, as above noted, made payments on the renewal note in a total sum of about $8,000. And these payments were presumably made to the Bank, in Adams County, the place designated for payment in the renewal note.

Based upon the foregoing analysis of the facts, about which there is no real dispute, it seems evident to us that the Bank's claim did "arise" out of the transactions on the part of the petitioners which occurred within Colorado. It should be emphasized that this is not, as such, a negotiable instruments case. Hence, because of the inherent nature of the present controversy, we are not concerned with whether in the strict legal sense the renewal note extinguished the liability arising from the first note. Rather, this is a dispute as to whether the trial court has *in personam* jurisdiction over the person of the petitioners. And certainly the renewal note, from the purely factual point of view, has its genesis in the transaction by the petitioners of business within Colorado. But for the fact that the petitioners came to Colorado to borrow $30,000, there never would have been a renewal note.

In support of our conclusion that the trial court does have jurisdiction over the person of these petitioners,

20

see *National Bank of America at Salina v. Calhoun,* 253 F. Supp. 346; *Longines-Wittnauer Watch Company v. Barnes and Reinecke, Incorporated,* 15 N.Y.2d 443, 209 N.E.2d 68; 261 N.Y.S.2d 8, *G. Benedict Corporation v. Epstein,* 47 Misc.2d 316, 262 N.Y.S.2d 726; *Hunter-Hayes Elevator v. Petroleum Club Inn Co.* 77 N.M. 92, 419 P.2d 465; and *Kropp Forge Company v. Jawitz,* 37 Ill. App.2d 475, 186 N.E.2d 76.

These several cases, among other things, stand for the proposition that even though the "last act," such as the signing of a contract, for example, may have occurred outside the geographical confines of the forum state, nevertheless the statutory test of a claim arising out of the transaction of any business within the state may still be met by the showing of *other* "purposeful acts," performed within the forum state by the defendant in relation to the contract, even though such acts were preliminary, or even subsequent, to the execution of the contract itself. So, in the instant case, though the petitioners admittedly executed the renewal note in Utah, they had each nonetheless performed in Colorado several "purposeful acts" relative thereto.

Having thus determined that our long-arm statute does encompass the present factual situation, the only remaining question is whether, as applied to these petitioners, our statute in any manner offends the due process clause. We now hold that it does not so offend.

In *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed 95, the United States Supreme Court said:

" '. . . . due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' "

And in *Hanson v. Denckla,* 357 U.S. 235, 78 S. Ct.

1228, 2 L.Ed2d 1283 the United States Supreme Court also said:

" 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case *that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'* " (Emphasis added.)

The maintenance of the Bank's claim against these petitioners in the district court of Adams County does not, in our considered view, offend any of the "traditional notions of fair play and substantial justice." On the contrary, it seems to us to be eminently fair and just to require the petitioners, who were able to come over the mountain to borrow $30,000, to return when they are allegedly in default as concerns repayment of the loan. And the fact that they are said to be in default on their renewal note, as contrasted with their original note, is of no significance insofar as the jurisdictional issue is concerned.

The rule is discharged.