**CLINIC MASTERS, INC., a Colorado corporation, Plaintiff,**

v.

**Dr. Maurice D. McCOLLAR, Defendant.**

Civ. A. No. 67–C–111.

United States District Court
D. Colorado.

June 8, 1967.

———•———

Eugene O. Perkins, Colorado Springs, Colo., for plaintiff.

Holland & Hart, David Butler, Denver, Colo., for defendant.

WILLIAM E. DOYLE, District Judge.

MEMORANDUM OPINION AND ORDER

This matter is before us on defendant's motion to quash the service of process and to dismiss for lack of personal jurisdiction. Plaintiff is a Colorado corporation maintaining business offices in Colorado Springs, Colorado, and Independence, Missouri. Defendant is a chiropractor and a citizen and resident of Minnesota maintaining his only place of business there. The case was originally filed in the District Court in and for the County of El Paso, Colorado, and was subsequently removed to this court.

Defendant is an individual non-domiciliary on whom personal service has not been made in Colorado. Therefore, the Colorado "long-arm" statute, 1963 C.R.S. 37–1–26 (Perm.Cum.Supp.1965), concededly affords the only basis for serving him with process. In pertinent part, this statute provides:

"(a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, * * * submits such person, * * * to the jurisdiction of the courts of this state, concerning any cause of action arising from:

"(b) The transaction of any business within this state;

"(c) The commission of a tortious act within this state;

"(d) The ownership, use, or possession of any real property situated in this state; or

"(e) Contracting to insure any person, property, or risk residing or located within this state at the time of contracting."

Admittedly, and as is apparent from the facts, paragraph (b) is the only one that concerns us here.

The facts, as they appear in the pleadings and affidavits, are these: In May, 1966, defendant attended a seminar of the International Pain Control Institute at Kansas City, Missouri. While at Kansas City, the defendant was introduced to Dr. Gordon D. Heuser, a chiropractor who was associated with the presentation of the seminar, and who was, and is, a principal officer of the plaintiff. Dr. Heuser provided defendant

with a "Clinic Masters Application" which the defendant completed and gave to Heuser along with a check for $100.00 payable to Clinic Masters. This application was for enrollment in the "Clinic Master System" under which plaintiff trains chiropractors in methods for increasing their efficiency in business and income.

Defendant then returned to Minnesota, where he shortly received a letter from Dr. Heuser confirming his enrollment and reservation in a training session to be held in Colorado Springs, Colorado, during the week of June 19–25, 1966. Defendant attended this session, where, on June 20, 1966, he executed a contract with the plaintiff for receipt of its "Clinic Master System." The basic contract signed by defendant was presented and read to the entire group of chiropractors attending the training session. Later, defendant met with representatives of the plaintiff and negotiated certain changes in the fee arrangement which were formally set forth in two amendments to the contract executed the same day, June 20, 1966. Basically, this contract provided for defendant to use the "Clinic Master System," and share any increase in gross income with the defendant according to an agreed formula. Paragraph 19 of the contract contained the following provision:

"The State of Colorado and County of El Paso shall be considered as the place of entering into this contract, and the laws of the State of Colorado shall govern this contract and any interpretations or constructions thereof."

While in attendance at the Colorado Springs training session defendant completed certain psychological and general medical information tests which apparently served as a basis for the counseling services he had contracted for. In addition, he submitted to plaintiff a statement of desired goals, a statement of accounts receivable, and completed various other questionnaires relating to his business practices and methods of operation. He was given forms and materials relating to the Clinic Master System, and he ordered various supplies. On June 25, 1966, defendant returned to Minnesota and has not returned to Colorado since that date. However, he did maintain correspondence with plaintiff at Colorado Springs, advising them of his progress and submitting various reports and statements. In addition, he received materials and information from plaintiff's Colorado Springs office. Finally, in November, 1966, plaintiff attended a Clinic Masters' seminar in Kansas City, Missouri, where, for reasons not important here, he decided to terminate his contract.

Defendant contends that the contract signed in Colorado Springs had its genesis in Missouri, where he filed his application and made a $100.00 "downpayment". He argues that all essential negotiations were conducted in Missouri, and that only the ministerial act of execution was performed in Colorado. He further asserts that once the contract was signed, his contact with Colorado "wholly" ceased; that performance was entirely in Minnesota; and that anything done in Colorado thereafter was solely the unilateral act of plaintiff; that this is insufficient as a jurisdictional basis (Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 [1958]).

We are of the opinion that defendant's contacts with Colorado were constitutionally sufficient under the principles laid down in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and Hanson v. Denckla, supra, to support service under the long-arm statute. Although negotiations were commenced in Missouri, it is nevertheless evident that they were continued and culminated in Colorado Springs. Two amendments representing defendant's individual negotiations with the plaintiff were executed on the same day that the basic contract was signed. Furthermore, a substantial degree of performance was achieved in Colorado. While at the training session,

defendant completed various tests upon which plaintiff's counseling services were based, and received necessary information and materials.

In a recent opinion, the Colorado Supreme Court upheld service of process under subparagraph (b) of the long-arm statute on facts considerably less favorable in terms of Colorado acts than those presented here. In Knight v. District Court of Seventeenth Judicial District, Colo., 424 P.2d 110 (1967), defendants were Utah residents who negotiated a loan at a bank in Adams County, Colorado, and executed a promissory note in evidence thereof. Several months later, a renewal note in the same principal amount as the first note was executed by defendants in Salt Lake City, Utah, and then mailed to the Colorado bank. Action was brought on the note and defendants sought to quash service under the long-arm statute on the ground that the plaintiff bank's claim did not arise out of any business transacted by them in Colorado. They specifically pointed to the fact that the renewal note had been signed in Utah. The court held that plaintiff's claim did arise from the transaction of "any business" within Colorado, and approved the service of process.

"It seems evident to us that the petitioners most certainly did transact business within this state. To illustrate, petitioners, and each of them, voluntarily left their place of residence in Utah and made the long journey to Adams County in Colorado. There they very successfully negotiated a loan of $30,000 from the Bank. At this same time and place, the petitioners, in return for this loan, executed and delivered to the Bank their promissory note in the principal amount of $30,000. Surely, it cannot be seriously denied that the petitioners, physically present within the state, *did* transact business—and about $30,000 worth of business—within this state.

\* \* \* \* \* \*

"And certainly the renewal note, from the purely factual point of view, has its genesis in the transaction by the petitioners of business within Colorado. But for the fact that the petitioners came to Colorado to borrow $30,000, there never would have been a renewal note." 424 P.2d at 112.

Thus, defendants' single excursion into Colorado for the purpose of negotiating a loan was deemed a sufficient contact to support the service. The contacts of petitioner McCollar with Colorado were more substantial than this.

Defendant has urged that our decision in Circle A Drilling Co. v. Sheehan, D. Colo.1966, 251 F.Supp. 242, is authority for quashing the service here. That was a suit on a promissory note which had been negotiated and signed in Montana. Previously, the parties had executed a contract in Colorado, but plaintiff had elected to sue upon the note rather than upon the contract. We dismissed the action for want of jurisdiction with the comment that a different result might have obtained had the suit been filed on the contract, "assuming substantial negotiations in Denver \* \* \*." Thus, *Circle A Drilling* is clearly inapposite to the case now before us. Here, negotiations leading to the contract upon which this action is brought were conducted in Colorado, at least to a considerable degree. The contract itself provides that Colorado is the place of "entering into" the agreement. In *Circle A Drilling*, there was no intimation that any negotiations concerning the note took place in Colorado.

For the above reasons, it is

Ordered, that defendant's motion to quash the service of process and dismiss for lack of jurisdiction be, and the same hereby is, denied.