**HYDRAULICS UNLIMITED MFG. CO.,**
a Colorado Corporation, Plaintiff,

v.

**B/J MANUFACTURING CO., Inc., a Kansas Corporation, James V. Copeland and Benjamin R. Neier, Defendants.**

Civ. A. No. C–2632.

United States District Court,
D. Colorado.

Jan. 6, 1971.

Order Jan. 29, 1971.

Brenman, Ciancio, Rossman, Baum & Sobol, by Martin Zerobnick, and Drake & Crandell, by Ralph F. Crandell, Denver, Colo., for plaintiff.

Van Valkenburgh & Lowe, by H. B. Van Valkenburgh, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

Plaintiff, as licensee, seeks to avoid the provisions of a nonexclusive license agreement governing the use of a patent. It asks a declaration of the patent's invalidity, seeks to recover royalties paid to the defendants pursuant to the license agreement and asks treble damages for alleged price discrimination.

The matter is presently before us on defendants' motions to quash service of process and to dismiss the complaint for improper venue, lack of personal jurisdiction and lack of a justiciable controversy. Plaintiff is a Colorado corporation with its principal place of business at Eaton, Colorado. The individual defendants are citizens and residents of Kansas. B/J Manufacturing Co., Inc., is a Kansas corporation, partly owned by the individual defendants, which maintains its business offices, stock and equipment solely in Kansas. Although B/J is not licensed to do business in Colorado and has appointed no resident agent, apparently it does deliver goods sold by solicitation from Kansas to Colorado. Plaintiff predicates jurisdiction upon diversity of citizenship.

From the pleadings and affidavits the following facts appear: Defendants Copeland and Neier made application for a patent covering a "Feed Mixer" in August 1961. In December 1962 they threatened plaintiff with suit for infringement. Following preparatory negotiations in Kansas, a nonexclusive license agreement providing for the payment of five percent of plaintiff's gross sales as royalties was executed between the parties on March 8, 1963. Plaintiff

signed the agreement in Colorado; Copeland and Neier executed it in Kansas. From the date of execution of the license agreement until December 1969, when the patent was assigned to B/J Manufacturing Co., Inc., plaintiff paid the individual defendants $139,403.16 in royalties. After the assignment Hydraulics paid B/J an additional $4,557.03 in royalties for sales through July 31, 1970. Since that date, no royalty payments have been made. Defendants have not threatened or filed suit for infringement, nor have they sought to recover royalties that may be due. Additionally, the defendants have not attempted to exercise their contractual right to examine plaintiff's records to ascertain the amount of royalties owing. In sum, none of the defendants has taken action since plaintiff's cessation of payments under the license agreement. Thus, plaintiff's initiation of suit was the first intimation of controversy between the parties.

None of the defendants was personally served in Colorado. They assert the receipt of royalty payments from Colorado, plaintiff's execution of the license agreement there and the sale and shipments of goods into the state are insufficient contacts to confer personal jurisdiction on this court.

In certain circumstances, extraterritorial service of process may validly issue from this court under the provisions of Federal Rule of Civil Procedure 4(e), which provides:

> Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule.

Admittedly, and as appears from the facts, paragraph (b) of the Colorado "long arm" statute, C.R.S. 37–1–26 (Supp.1965), affords the only basis for serving the defendants with process and is the sole ground upon which plaintiff can rely for personal jurisdiction. That statute provides, in pertinent part:

> (a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, * * * submits such person, * * * to the jurisdiction of the courts of this state, concerning any cause of action arising from:

> (b) The transaction of any business within this state;

> * * * * * *

The constitutional test for personal jurisdiction has been expounded by the Supreme Court in a series of decisions, commencing with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Although the Court found the corporation present in Washington because of continuous and systematic business activities, it adopted a different jurisdictional test for the due process clause. Due process, the Court stated,

> * * * requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158.

The test, continued the Court,

> * * * cannot be simply mechanical or quantitative. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. 326 U.S. at 319, 66 S.Ct. at 160.

This test recognizes the importance of the benefits enjoyed by a nonresident defendant who is accorded the protection of the forum state's law and emphasizes the necessity for fairness in considering the relative interests, hardships and advantages which accrue to the parties because of the defendant's activity. *See*

Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 923–25 (1960). Thus, if plaintiff's injury does not arise out of activity done in the forum state, it would seem that contacts with that state should be greater if the burden of forcing the defendant to defend there is not to offend "traditional notions of fair play and substantial justice."

█ The factual situation in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), concerned a claim which arose from a single incident of business activity initiated within the forum state by the defendant. The Supreme Court found that sufficient to provide the minimum contacts for personal jurisdiction under the due process clause. *See* Kurland, The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts, 25 U.Chi.L.Rev. 569, 606–610 (1958) and cases cited therein. The following year, however, the Supreme Court narrowed that holding in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). There, the Court rejected Florida's assertion of *in personam* jurisdiction over a Delaware trustee appointed by a Florida settlor. The Court stated that jurisdiction could not be upheld on the basis of the "unilateral activity of those who claim some relationship" with the nonresident. 357 U.S. at 253, 78 S.Ct. at 1239. The Court continued:

> It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. 357 U.S. at 253, 78 S.Ct. at 1240.

The Court explained the *McGee* decision by noting that the defendant initiated its contacts with the forum state by soliciting an insurance agreement there. Thus, the contacts between state and defendant must be more than incidental since jurisdiction is not exercised because the forum state has become the "center of gravity" of the litigation or because it is most convenient. 357 U.S. at 254, 78 S.Ct. 1228.

█ Although the jurisdictional question must be resolved by considering the salient facts of the particular case, some principles stand out clearly from these decisions. We think the defendant must purposely initiate or acquiesce in activity conducted within the forum state on its behalf. It must also avail itself of the protection of the forum state's law. Once that activity has been initiated, a single incident, substantial in nature, which gives rise to the plaintiff's claim will suffice to confer personal jurisdiction upon the courts of the forum state. *See, e. g.*, McGee v. International Life Insurance Co., *supra*; Clinic Masters, Inc. v. McCollar, 269 F.Supp. 395 (D.Colo.1967); Knight v. District Court of Seventeenth Judicial District, 162 Colo. 14, 424 P.2d 110 (1967); *see generally* Annot., 20 A.L.R.3d 1201 (1968). For example, in the *Clinic Masters* and *Knight* cases the defendant had been present in Colorado for extended negotiations which culminated in the execution of a contract here that later gave rise to plaintiff's claim. The defendant's contacts with Colorado were so substantial that jurisdiction was properly assumed even though a single incident of business activity was involved. Jurisdiction has also been found where the business activity giving rise to the claim, though insubstantial, was related to extensive business activities carried on by the defendant within the state. *See, e. g.*, Minnesota Automotive, Inc. v. Stromberg Hydraulic Brake & Coupling Co., 309 F.Supp. 614 (D.Minn.1970); Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F.Supp. 155 (D.R.I.1969); Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219 (D.N.J. 1966).

In the instant case plaintiff must rely upon these activities of the defendants to support its jurisdictional contention: (1) the shipment to Colorado of goods ordered in response to solicitations carried out in Kansas; (2) plaintiff's sig-

nature of the license agreement in Colorado; and (3) the payment of royalties in Kansas.

As we noted previously, none of the negotiations preceding execution of the license agreement was conducted in Colorado. They were apparently concluded in Kansas where the defendants signed the agreement. Since the royalty payments are made pursuant to terms of the license agreement plaintiff in essence relies upon the "one-act" execution of that agreement to substantiate personal jurisdiction over the defendants under the long arm statute. In these circumstances, the presence or absence of negotiations by the defendant in the forum state often determines whether his activity is substantial enough to satisfy the due process test. In Circle A Drilling Co. v. Sheehan, 251 F.Supp. 242 (D.Colo.1966), this court was confronted with a similar situation. Plaintiff's suit on a promissory note negotiated and signed in Montana was dismissed for lack of personal jurisdiction despite the negotiation and execution in Colorado of a contract which served as partial consideration for the note. The court, speaking through Judge Doyle, commented that:

> The note was executed in Montana. Presumably all negotiations took place there; *at least, it is nowhere intimated that any negotiations concerning the note took place in Colorado*. The only contact with Colorado, if such can be deemed a "contact", is the fact that part of the consideration was, presumably, a contract executed in Colorado. Such contact does not satisfy "traditional notions of fair play and substantial justice."

> \*     \*     \*     \*     \*     \*

> *Were the instant suit filed on the contract, assuming substantial negotiations in Denver*, a different conclusion might well result. (Citation omitted.) (Emphasis added.) 251 F.Supp. at 244.

■ Where, as here, no negotiations have been conducted in the forum state,

the minimum contacts necessary for personal jurisdiction are found wanting. We must consider then whether the remaining factors plaintiff has advanced support its contention that we have *in personam* jurisdiction.

■ Considering the royalty payments apart from the agreement to which they relate, merely because they were derived from commerce generated in Colorado is too insubstantial and remote a factor to provide the requisite contacts between the defendants and the state of Colorado. If other factors, such as extended negotiations, the defendants' presence, or substantial and related business activity in Colorado were shown, a different conclusion might be indicated. *See* Clinic Masters, Inc. v. McCollar, *supra*; Circle A Drilling Co. v. Sheehan, *supra*; Knight v. District Court of Seventeenth Judicial District, *supra*; *but see* Southern Machine Co., Inc. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968). In the present circumstances we cannot, however, accept plaintiff's proposition that payment alone is a sufficient minimum contact. To so hold would do violence to the notion of due process and expand our jurisdiction to include those having no more relation to this forum than the receipt of payments in envelopes postmarked in Colorado. We think due process requires more than that.

■ Finally, the asserted sale of goods by the defendants in Colorado is too speculative to provide the requisite jurisdictional contacts since solicitations were made from Kansas and since the defendants maintain no sales or service personnel here. *Cf.* Minnesota Automotive, Inc. v. Stromberg Hydraulic Brake & Coupling Co., *supra*. There has been no showing of the volume or extent of defendants' sales or the relation of those sales to the license agreement. For personal jurisdiction purposes, we consider the "quality and nature of [that] activity" too indirect and remote from the license agreement upon which plaintiff has brought suit. International Shoe

Co. v. Washington, 326 U.S. at 319, 66 S.Ct. 154; *see also* Circle A Drilling Co. v. Sheehan, 251 F.Supp. at 244. Alone, or in combination with the equally tenuous "contact" existing by virtue of the license agreement itself, these sales are not an activity which will permit an exercise of *in personam* jurisdiction by this court.

▮ From the facts before us, we are unable to find "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within [the state of Colorado]." Hanson v. Denckla, 357 U.S. at 253, 78 S.Ct. at 1240. Not only has there been no showing that the defendants initiated contacts with this forum, but it appears they purposely avoided making such contacts. In these circumstances, we do not think the mere existence of a contract executed by a Colorado resident, which plaintiff relies upon in essence, is sufficient to confer personal jurisdiction over an absent nonresident defendant. To hold otherwise would offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. at 316, 66 S.Ct. at 158. Doubtlessly, it is no more unfair to require plaintiff to prosecute this suit in Kansas than it is to require defendants to respond here. Thus, this court finds that it is without jurisdiction over the person of the defendants in this diversity action and that their motion to dismiss should be granted.

Because of the conclusion we have reached on defendants' motion to dismiss for lack of personal jurisdiction, it is unnecessary for us to consider the remaining matters they have raised.

It is therefore

Ordered that defendants' motion to dismiss be and the same hereby is granted.

## ORDER

Following dismissal of this action for lack of personal jurisdiction, plaintiff filed what it denominated a "motion for new trial" on January 18, 1971. Since plaintiff's objective is to set aside our order of dismissal, we will treat its motion as one for relief pursuant to Federal Rule of Civil Procedure 60(b).

The only contentions urged by plaintiff that require comment relate to the presence of defendants Neier and Copeland in Colorado. We have ruled previously on the other matters advanced by plaintiff and nothing before us necessitates a reconsideration of them. On the basis of two letters written between Hydraulics and the defendants' patent counsel in December 1962, which plaintiff tendered with its motion as exhibits, plaintiff claims the defendants initiated business contacts with this forum and conducted negotiations here which culminated in the license agreement in issue. We think defendants' response successfully refutes those contentions.

Neier and Copeland journeyed to Colorado on November 28, 1962, to examine plaintiff's feed mixer for possible infringement of a patent for which they had applied. During that visit no charge of infringement was made. While the defendants were in Colorado, the plaintiff proposed a licensing arrangement. Since defendants had not previously contemplated licensing their product, they postponed consideration of plaintiff's proposal until after their return to Kansas. In a letter dated December 11, 1962, they advised plaintiff of their willingness to grant the license. As detailed by defendants' exhibits 2 through 15, subsequent negotiations and execution of the agreement were conducted by an exchange of correspondence and documents between the parties or their representatives in Kansas and Colorado respectively. Thus, none of the crucial steps took place wholly within the State of Colorado.

▮ In sum, then, plaintiff contends that a one day trip to Colorado and defendants' tour of its plant in Eaton, Colorado, are sufficient business contacts to confer *in personam* jurisdiction on this court pursuant to Colo.Rev.Stat.Ann. § 37–1–26(1) (b) (Supp.1965). We think

that assertion is erroneous. Since neither Copeland nor Neier came to Colorado to "sell" plaintiff a license agreement and since no negotiations were conducted here, their obvious purpose was not to avail themselves of the privilege of conducting business here. In these circumstances, the minimum contacts necessary for an exercise of personal jurisdiction do not exist. *See* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Plaintiff has shown us no reason to grant it relief from the order of dismissal previously entered.

It is therefore

Ordered that plaintiff's motion for relief be and the same hereby is denied.