**PLUS SYSTEM, INC., a Delaware corporation, Plaintiff,**

v.

**NEW ENGLAND NETWORK, INC., a Connecticut corporation, Defendant.**

Civ. A. No. 92–F–1217.

United States District Court, D. Colorado.

Sept. 23, 1992.

---

### ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the Court on Defendant's Motion to Dismiss for Lack of

Subject Matter Jurisdiction, For Lack of Personal Jurisdiction, and For Failure to State a Claim Against the Defendant, filed on September 5, 1992. In its motion, Defendant submitted materials outside of the pleadings. Plaintiff did the same in its response. Accordingly, under Fed.R.Civ.P. 12(b), Defendant's motion will be treated as one for summary judgment.

The litigants have fully briefed the issues contained in the motion. Jurisdiction is based upon 28 U.S.C.A. § 1332 (West 1966 & Supp.1992). For the reasons stated below, the motion is DENIED.

## I.

Plaintiff PLUS System, Inc. ("PLUS") brought suit for (1) breach of contract and (2) a declaratory judgment that Defendant New England Network, Inc. ("NENI") violated valid terms of a contract between the parties and that PLUS may therefore terminate the contract.

Plaintiff is a non-stock membership corporation incorporated under the laws of Delaware and having its principal place of business in the City and County of Denver, Colorado.[1] It is comprised of approximately 4500 depository financial institutions and networks owned by them throughout the United States. These institutions issue plastic debit and credit cards bearing the PLUS marks and accept such cards at automatic teller machines ("ATMs") for use in a variety of banking transactions, including account withdrawals, deposits, transfers, and inquiries. Plaintiff administers and provides support for the PLUS shared national ATM network, enabling customers of member financial institutions to access their accounts in participating PLUS ATMs throughout the country.

The PLUS trademarks have been extensively used, advertised, and promoted throughout the United States and the world in association with the financial services offered by PLUS' members. PLUS spends millions of dollars in advertising its PLUS marks, and claims that through advertising and widespread use, the marks have become renowned throughout the

country. PLUS claims that the marks have come to be recognized as identifying PLUS System, Inc. and the services offered by its members.

Defendant, NENI, is a membership corporation organized under the laws of Connecticut and having its principal place of business in Wallingford, Connecticut. NENI is comprised of approximately 700 financial institutions in New England which market and promote the NENI regional shared ATM network under the "Yankee 24" service mark. Under an agreement between the parties executed on June 12, 1987, NENI is a "processor" member of PLUS System, Inc., a category of membership created exclusively for regional networks owned by depository financial institutions. As a processor, NENI processes transactions for 24 financial institutions which it has "sponsored" into PLUS System, Inc. NENI is entitled to the use of PLUS marks and applicable services of PLUS subject to PLUS' operating regulations. In return, NENI agreed to be bound by PLUS' by-laws and operating regulations as amended from time to time, and to actively promote the services and systems offered by PLUS.

The interaction of PLUS System, Inc. with the shared ATM networks requires some explanation. Shared ATM networks are relatively sophisticated businesses whose function is to deliver banking services at a variety of locations, both during and after normal banking hours, without the need for a human teller. Since ATMs were first used in the 1960s, financial institutions have become aware of the value of shared networks that enable customers to access their accounts through the ATMs of unrelated banks in the same or different states. By linking the networks of several banks, "regional" ATM networks were formed. Those networks adopted a common trademark to identify their respective services and required that members agree to uniform operating regulations, the most fundamental of which is the promise of each ATM-owning bank to accept at its

---

**1.** All factual recitations in this Order have been alleged in the litigants' pleadings.

ATMs those cards issued by every other bank participating in the network.

Recognizing that bank customers often travel outside of the geographic area served by any one regional ATM network, a group of 26 U.S. financial institutions joined in 1982 to form PLUS System, Inc., a shared ATM network designed to be national in scope. Customers determine whether they can use an ATM by matching one of the trademarks appearing on the machine with the trademark appearing on the card issued by their bank or regional network. A shared network transaction involves four parties: the bank that issues the card, the customer, the ATM-owning bank, and the ATM network itself. In a transaction involving a customer and a bank other than the bank which issued the card (i.e., a "foreign transaction"), the customer initiates the transaction by inserting his or her card in an ATM of a participating network member. The transaction is routed from the ATM-owning bank through the PLUS computer switch to the bank that issued the card. If the ATM receives authorization from the customer's bank, the customer is free to engage in a variety of transactions.

At the end of each day, the PLUS switch "settles" all accounts on the network. In settlement of accounts, the PLUS switch summarizes and calculates for each ATM member bank the transactions performed by its customers. For its routing and settling services, among others, PLUS is paid a small fee per transaction by the bank issuing the customer's card. PLUS' central processing computer located in Denver, Colorado, processes over 12 million such transactions per month. To protect its substantial investment in the services and PLUS marks, and to ensure that it benefits from its goodwill and name recognition, PLUS' board enacted Operating Regulation 2.15 ("the royalty rule"), requiring that each ATM member pay a royalty of $.03 to PLUS on transactions that do not use the PLUS System switch but in which the PLUS mark is the only mark that appears on both the customer's card and the ATM. Plaintiff PLUS claims that the intent of the regulation is to prevent "free-riding" on the renowned PLUS mark and name.

In this action, Plaintiff claims that Defendant is responsible, as processor of the regional network "Yankee 24," for implementing the royalty rule in the Yankee 24 network. Plaintiff wrote a letter to Defendant demanding compliance with the rule, to which Defendant responded by saying that it did "not intend to implement" the rule. Citing concerns over the costs of free-riding and the integrity of all of its contracts with regional networks around the country, Plaintiff brought this action for declaratory judgment and damages. On motion for summary judgment, Defendant claims that Plaintiff lacks subject matter jurisdiction, lacks personal jurisdiction, and has failed to state a claim because Defendant is not an ATM member subject to the rule.

## II.

■ Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States,* 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436 (1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Dayco Prods., Inc.,* 758 F.Supp. 630, 631 (D.Colo.1990).

■ In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1155 (D.Colo.1990). All doubts must be resolved

in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

 In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, ·106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show· an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2553. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

 Once the movant has made an initial showing, the burden of proof shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

We find that summary judgment is inappropriate on Plaintiff's causes of action for breach of contract and declaratory judgment. For the reasons detailed below, the Defendant is not entitled to prevail as a matter of law on its claims of lack of subject matter jurisdiction, lack of personal jurisdiction, or failure to state a claim.

### III.

 Defendant's first request for summary judgment involves a challenge to this Court's subject matter jurisdiction. Specifically, Defendant claims that the amount in controversy alleged by Plaintiff does not exceed the $50,000 jurisdictional requirement of 28 U.S.C.A. § 1332. Defendant attempts to support its contention by citing figures showing that the maximum amount of money that could be recovered following a finding of the royalty rule's validity is only $3751.20. Defendant also challenges Plaintiff's claim that the amount in controversy requirement could be independently met by the object of the declaratory judgment action. We need not decide whether the declaratory judgment request implicates the jurisdictional amount, however, because we find that the amount alleged in the controversy over the royalty rule, combined with attorneys' fees, exceeds the statutory requirement.

It is well settled that attorneys' fees may be included in the amount in controversy for purposes of satisfying the jurisdictional requirement where such fees are provided by statute or contract. *See Missouri State Life Insurance Co. et al v. Jones,* 290 U.S. 199, 202, 54 S.Ct. 133, 133–34, 78 L.Ed. 267 (1933); *Molzahn v. State Farm Mut. Auto. Ins. Co.,* 422 F.2d 1321, 1322 (10th Cir. 1970); 14A C. Wright & A. Miller, *Federal Practice and Procedure,* § 3712 at 176–77 (2d. ed. 1985) ("The law is now quite settled that attorneys' fees are a part of the matter in controversy when they are provided for by contract or by state statute ..."); *see also Building Erection Services Co. v. Ceco Corp.,* 760 F.Supp. 188, 189–90 (D.Kan.1991). Plaintiff has submitted sworn affidavits in this case alleging current attorneys' fees of over $60,000, and

projected fees of $150,000. Plaintiff correctly points out that the parties' PLUS System Processor Application and Membership and Licensing Agreement ("the Agreement") provides for "reasonable attorneys' fees and expenses" for the nonbreaching party. Defendant's only dispute with Plaintiff's claim is that Plaintiff's estimate of attorneys' fees is unreasonable.

■ However, this Court will not look into the reasonableness of Plaintiff's estimate of attorneys' fees on summary judgment. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *see also Ferme Rimouski, Inc. v. Limousin West, Inc.*, 620 F.Supp. 552, 554 (D.Colo.1985). There is no such legal certainty in this case. Generally, unless the law provides otherwise, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* 303 U.S. at 288, 58 S.Ct. at 590. The Court has considered the arguments advanced by Defendant and does not find them persuasive. The Court therefore holds that the amount in controversy is satisfied.

### IV.

■ Defendant also challenges this Court's personal jurisdiction over Defendant. Personal jurisdiction is the power to subject a particular defendant to the decision of a court. *Stone's Farm Supply, Inc. v. Deacon*, 805 P.2d 1109, 1113 (Colo. 1991). To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, we look to the law of the forum state, Colorado. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). In Colorado, an assertion of personal jurisdiction must satisfy both the requirements of its long arm statute, Colo.Rev.Stat.Ann. § 13–1–124 (Bradford 1987), and the requirements of due process. *Doe v. National Medical Servs.*, 748 F.Supp. 793, 795 (D.Colo.1990); *D & D Fuller CATV*

*Constr., Inc. v. Pace*, 780 P.2d 520, 523 (Colo.1989).

■ Colorado's long arm statute subjects a defendant to jurisdiction for the transaction of any business within this state. Colo.Rev.Stat.Ann. § 13–1–124(1)(a) (Bradford 1987). Under principles of due process, a defendant must have minimum contacts with the forum state such that maintenance of the suit would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Under Colorado law, the District Court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Waterval v. District Court*, 620 P.2d 5, 8 (Colo.1980), *cert. denied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

■ Colorado has adopted a three-prong test when analyzing questions of in personam jurisdiction. *Custom Vinyl Compounding, Inc. v. Bushart & Assocs., Inc.*, No. 92–F–450, slip op. at 3 (D.Colo. Apr. 15, 1992). Although the plaintiff need only make a prima facie showing of jurisdiction, *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985), the plaintiff also has the burden of satisfying the three-prong test. *See Fidelity & Casualty Co. v. Philadelphia Resins Corp.*, 766 F.2d 440, 443 (10th Cir.1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986). First, a defendant must purposefully avail him- or herself of the privilege of acting in Colorado. *See Hanson v. Denckla*, 357 U.S. 235, 252, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Second, the claim for relief must arise from the consequences in Colorado of the defendant's activities. Finally, the defendant's activities or their consequences must have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. *Alameda Nat'l Bank v. Kanchanapoom*, 752 F.Supp. 367, 369 (D.Colo.1990); *Kingston v. Brussat*, 698 F.Supp. 215, 216 (D.Colo.

1988); *Van Schaack & Co. v. District Court*, 538 P.2d 425, 426 (Colo.1975).

### A.

Under the first prong, we believe that Defendant NENI has purposefully availed itself of the forum state. In evaluating purposeful availment, we consider the quality and nature of the contacts with Colorado, as well as the frequency of such conduct. *Von Palffy–Erdoed v. Bugescu*, 708 P.2d 816, 818 (Colo.App.1985). While Defendant may not have been present in Colorado, physical presence is not required. *Waterval*, 620 P.2d at 8. A single act may satisfy this requirement. *Scheuer v. District Court*, 684 P.2d 249, 251 (Colo.1984). In the instant action, NENI availed itself of the State of Colorado by means which might be of insufficient quantum to justify personal jurisdiction if considered individually, but which clearly rise to purposeful availment when viewed collectively. Of some weight are the following two factors: that Defendant joined a Colorado-based national ATM network and that Defendant entered into a licensing contract signed, at least by Plaintiff, in Colorado.[2] We need not hold that personal jurisdiction could be premised upon these contacts alone, for Defendant has engaged in other means of contact with Colorado.

First, the Agreement entered into by the parties provides that the Agreement is to be governed and interpreted by the laws of the State of Colorado. A contractual choice of law clause is insufficient to confer jurisdiction by itself. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *GCI 1985–1 LTD. v. Murray Properties Partnership of Dallas*, 770 F.Supp. 585, 589–90 (D.Colo. 1991). Unlike a forum selection clause, a choice of law clause designates only the body of law to be applied in resolving the dispute, not the location for its resolution.

See *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir.1985). But choice of law clauses have been held to reaffirm a party's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187. See also *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir.1990); *Slawson v. Hair*, 716 F.Supp. 1373, 1377–78 (D.Kan. 1989). Common sense would dictate that a defendant is served notice of the high likelihood of being called to Colorado to answer disputes when it agrees to a Colorado choice of law clause and it deals with a Colorado-based entity for Colorado-based services.

Second, Defendant made monthly payments to Plaintiff under the contract. Payments made in the forum state are evidence that some performance was rendered in the forum state, see *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir.1982), and such payments constitute some quantifiable degree of contact with the forum state. *Cleverock Energy Corp. v. Trepel*, 609 F.2d 1358, 1364 (10th Cir.1979).

Third, Defendant sent a representative to Colorado to initiate its relationship with PLUS as well as to be apprised of how the PLUS System functioned. The representative was taken on a tour of PLUS' computer facilities and representatives of PLUS explained to the NENI representative how the PLUS system operated. A corporate visit for purposes of future business dealings may be sufficient to constitute a transaction of business. See e.g., *Colorado Living, Inc. v. Deltona Corp.*, 338 F.Supp. 880 (D.Colo.1972).

Finally, NENI's computers communicate via telephone line with the central comput-

---

**2.** The pleadings and briefs omit the location at which Defendant signed the licensing contract. While the mere existence of a contract executed by a Colorado plaintiff is insufficient to confer long-arm jurisdiction, *Hydraulics Unlimited Mfg. Co. v. B/J Mfg. Co.*, 323 F.Supp. 996 (D.Colo.), aff'd, 449 F.2d 775 (10th Cir.1971), the negotia-

tion or execution of a contract by a defendant within the state is sufficient to constitute "doing business." See e.g., *East Vail Townhomes, Inc. v. Eurasian Dev. D.A., Inc.*, 716 F.2d 1346 (10th Cir.1983); *Clinic Master, Inc. v. McCollar*, 269 F.Supp. 395 (D.Colo.1967).

er of PLUS in Colorado on a regular basis.[3] Affidavit of Richard Yanak, ¶ 8, filed in support of NENI's Motion to Dismiss. PLUS' Colorado-based computer provides a variety of processing services, including inter-member group switching of transactions, inter-member group daily settlement of accounts, and exception handling procedures. These are the very services which make possible an interfacing national network of compatible ATM machines. Without the computer support provided by PLUS, NENI's sponsored institutions would be unable to allow its customers such latitude in making account transactions across the United States. The intangible nature of PLUS' services should not be perceived as detracting from their very real and valuable function; in the days of inferior technology, there could be no dispute over minimum contacts had Defendant physically flown to Colorado with its ATM machine and asked Plaintiff to perform switching services on it. Similarly, Defendant's use of Plaintiff's computer system to effect the same result is no less an availment of Colorado and its laws. That the Defendant's sponsored members communicate with Plaintiff's computer indirectly through an independent data processor in Wisconsin is irrelevant as a matter of both agency law [4] and the realities of telecommunications. The fact remains that Defendant benefits from the services provided by Plaintiff's computer system, and in fact, those services form the basis for the licensing contract between the parties.

All of the above enumerated contacts, over the contract's life of the past five years, convince us that the quality, nature, and frequency of Defendant's activity show that Defendant purposefully availed itself of the forum state.[5] *Waterval*, 620 P.2d at 8.

### B.

■ We are also persuaded that the claim for relief arises from the consequences in Colorado of the Defendant's activities. Defendant entered into a contract with a Colorado corporation and Plaintiff claims that Defendant's alleged breach of that contract caused and is causing it economic loss in Colorado. Plaintiff is also seeking a declaratory judgment affecting Defendant's contract with Plaintiff and Plaintiff's other, similar contracts with many parties for services based in Colorado. Such economic ramifications support a finding that Plaintiff's cause of action emanates from Defendant's conduct. *See Marquest Medical Prods., Inc. v. Daniel, McKee & Company,* 791 P.2d 14, 16 (Colo. App.1990) (consequences of defendant's allegedly false representations resulted in substantial economic losses in Colorado).

### C.

■ We also find that the Defendant's activities or their consequences have a sub-

---

3. Plaintiff points out that the Tenth Circuit and United States Supreme Court have both recognized that, under modern business conditions, communication over telephone lines may be enough to satisfy the requirements of personal jurisdiction. *See Continental American Corp.,* 692 F.2d at 1314; *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. However, the nature of telephonic communication envisioned by those courts presumably revolved around actual, personal contact between the parties, whether in negotiating contracts, discussing prices, or ordering goods or services. The rulings of those courts serve more as analogy than precedent on the issue of whether communication between computers similarly constitutes 'contact.'

4. The Supreme Court observed in *Burger King* that "when commercial activities are 'carried on in behalf of' an out-of-state party, those activities may sometimes be ascribed to the party at least where he is a 'primary participan[t]' in the enterprise and has acted purposefully in directing those activities." 471 U.S. at 479, n. 22, 105 S.Ct. at 2186 n. 22 (citation omitted). In addition, Colorado's long-arm statute includes as contacts the activities of both the person being sued and his or her agent. Colo.Rev.Stat. § 13-1-124.

5. Defendant contends that it would be unduly burdensome to subject it to personal jurisdiction in every state in which NENI-member cardholders made transactions at ATMs bearing the PLUS logo. However, unfortunately for Defendant, such a basis for jurisdiction is not relevant to the facts of this case, has not been alleged by Plaintiff, and is not being considered by this Court. As outlined above, Defendant has numerous contacts with Colorado that are quite unrelated to whether its customers came to Colorado with their NENI/PLUS cards.

stantial enough connection with Colorado to make the exercise of jurisdiction reasonable. Defendant and its sponsored institutions receive their services and make payments to PLUS in Colorado. All of Defendant's communications with Plaintiff were directed to Plaintiff in Colorado. The consequences of the dispute between Plaintiff and Defendants have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. *McGee v. International Life Ins. Co*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). The connection is not so isolated or attenuated that the establishment of jurisdiction would be unjust. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). We find that the exercise of jurisdiction would be reasonable.

## V.

Defendant's final challenge to this Court's jurisdiction is that Plaintiff has failed to state a claim upon which relief can be granted. Defendant claims that the royalty rule at the foundation of this action applies only to "ATM members" and not to "processors." The royalty rule states in pertinent part:

Effective January 1, 1992, and thereafter, each ATM member shall pay an acquirer royalty fee of $.03 for each Foreign Transaction conducted at one of its ATMs and routed pursuant to any Switching Agreement ...

"PLUS System, Inc. Resolution," Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant NENI's Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Lack of Personal Jurisdiction, and for Failure to State a Claim Against Defendant, Exhibit C.

Plaintiff, however, asserts that NENI is responsible for its sponsored ATM members' compliance with the rules and regulations of the PLUS System. Paragraph 3(d) of the Agreement requires NENI to:

... accept and have full responsibility for the proper performance by the sponsored member of all requirements of, and all financial and other obligations under, the ... Bylaws, the Operating Regulations ... and any other agreements between [PLUS System] and the Sponsored Member and [NENI].

In addition, Operating Regulation 8.3 obligates processors to pay all PLUS System fees incurred by processor-sponsored members:

Processors shall be responsible for paying to [PLUS] on behalf of their sponsored members all penalties, fees, fines, or assessments levied on their respective members by [PLUS].

Plaintiff argues that these regulations, at least facially, make NENI ultimately responsible for the fees chargeable to NENI's sponsored ATM members under the royalty rule. In the context of the summary judgment standards which this Court must apply, we agree. Furthermore, Defendant's assertion that Plaintiff has failed to allege any wrongdoing on the part of NENI's sponsored ATM members in the first place is without merit. The failure of the ATM members to abide by PLUS' regulations—and NENI's failure to enforce that compliance—is logically implicit throughout Plaintiff's complaint. Defendant's stated refusal to implement the royalty rule [6] is clear evidence that it has not been implemented, and that Plaintiff is therefore being deprived of its royalties by the ATM members' failure to pay. We find that

---

**6.** NENI President Richard P. Yanak wrote to Mr. Ron Reed:

For all of the above reasons, New England Network, Inc. does not intend to implement PLUS Board Resolution 3 [Regulation 2.15]. PLUS should develop needed revenue without the ill conceived [sic] burden it places upon PLUS members, *processors* and *networks*.

(emphasis added). Letter from Richard P. Yanak to Ron Reed, dated August 27, 1991, Exhibit D.

The letter indicates not only that NENI considered itself subject to the royalty rule, but also that the royalty rule, obviously not implemented by NENI's sponsored ATM members, was something that NENI did not intend to implement itself. If NENI's sponsored members had already implemented the royalty rule, NENI would have had no reason to refuse to implement the rule. Clearly, then, the ATM members violated the rule and NENI was aware of that fact.

Plaintiff has stated a claim upon which relief can be granted.

## VI.

Accordingly, for all of the reasons stated above, Defendant is not entitled to judgment as a matter of law. It is therefore ordered that:

Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Lack of Personal Jurisdiction, and for Failure to State a Claim Against Defendant, filed August 5, 1992, is DENIED.