**EASTMAN KODAK COMPANY,**
Plaintiff,

v.

**STUDIENGESELLSCHAFT KOHLE** mbH, as trustee for the Max-Planck-Institut Fur Kohlenforschung, Defendant.

Civ. A. No. 74-87.

United States District Court,
D. Delaware.

April 24, 1975.

Edmund D. Lyons, of Morris, James, Hitchens & Williams, Wilmington, Del. and Francis T. Carr, and Kenneth E. Madsen, of Kenyon & Kenyon, Reilly, Carr & Chapin, New York City, for plaintiff.

Howard M. Handelman, of Bayard, Brill & Handelman, Wilmington, Del., and Arnold Sprung, and Nathaniel D. Kramer, of Burgess, Dinklage & Sprung, New York City, for defendant.

## MEMORANDUM AND ORDER

CALEB M. WRIGHT, Senior District Judge.

Plaintiff Eastman Kodak Company (Kodak) has brought this action for a declaratory judgment that United States Patents Nos. 3,113,115, 3,231,515, 3,257,332, 3,392,162, and 3,826,792, all owned by defendant Studiengesellschaft Kohl mbH (SGK), are invalid, unenforceable, and not infringed. Kodak is a New Jersey corporation with its principal place of business in Rochester, New York. Defendant is a West German organization equivalent to a corporation with its principal place of business at Mulheim, a. d. Ruhr, West Germany. This action was commenced by service of process on the Delaware Assistant Secretary of State in purported compliance with the Delaware long-arm statute, 8 Del.Code § 382. Defendant moved to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure, for lack of personal jurisdiction and for improper service of process. After briefing and argument on the motion, the Court suggested that the parties proceed immediately to brief and argue related venue issues, so that the Court could resolve all preliminary motions at once. Thereupon, defendant moved for dismissal for forum non conveniens, for dismissal under the Court's discretionary power in declaratory actions, for transfer, under 28 U.S.C. § 1404, to the Eastern District

of Texas, and for a stay pending the outcome of a related proceeding between these parties in the Eastern District of Texas.

Service of process on a corporation is the procedural incident of the assertion of a court's jurisdiction over it. The parties are in agreement with the general proposition that if a corporate defendant is amenable to service of process under the Delaware long-arm statute, it has sufficient contacts with this forum such that the maintenance of a suit does not offend the traditional notions of fair play and substantial justice incorporated in the Due Process Clause.[1] International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Scott Paper Company v. Scott's Liquid Gold, Inc., 374 F. Supp. 184 (D.Del.1974); Nacci v. Volkswagen of America, Inc., 297 A.2d 638, 641 (Del.Super.1972); Crowell Corp. v. Topkis Construction Co., 267 A.2d 613 (Del.Super.1970). The Delaware statute, 8 Del.C. § 382, provides in pertinent part:

(a) Any foreign corporation which shall transact business in this State without having qualified to do business under § 371 of this title shall be deemed to have thereby appointed and constituted the Secretary of State of this State, its agent for the acceptance of legal process in any civil action, suit, or proceeding against it in any state or federal court in this State arising or growing out of any business transacted by it within this State. . . .

(b) . . . "The transaction of business" or "business transacted in this State," by any such foreign corporation, whenever those words are used in this section, shall mean the course or practice of carrying on any business activity in this State, including, without limiting the generality of the foregoing, the solicitation of business or orders in this State.

The statute thus requires that two conditions be met before it can properly be invoked: (1) the corporate defendant must be transacting business generally in Delaware, and (2) the suit must arise from business transacted in the State. Scott Paper Co. v. Scott's Liquid Gold, Inc., 374 F.Supp. at 187; Simpson v. Thiele, Inc., 344 F.Supp. 7, 8 (D.Del. 1972).

SGK is not qualified to do business in Delaware and contends that it is not transacting business here pursuant to Section 382. SGK has no business office, manufacturing facility, or employees in Delaware. In October of 1973, SGK acquired the patents in suit, which had formerly been held by Dr. Karl Ziegler, the inventor. All of the patents relate to catalysts for polymerization of certain olefins, such as ethylene or proplylene, and to the processes for making polymers using such catalysts. Beginning in the mid-1950's, Dr. Ziegler engaged in continuous and extensive licensing activities with several Delaware corporations, most notably with three companies having headquarters and/or manufacturing facilities here: E. I. du Pont de Nemours and Company, Hercules, Inc., and Amoco Chemicals Corporation.[2] Since that time, millions of pounds of polymer have been produced by these firms under the licenses, and Du Pont and Hercules alone have paid Ziegler and SGK more than eight million dollars in royalties. Many of the license agreements provide that legal relations between the parties would be controlled by the law of Delaware. The license agreements created significant obligations of a continuing nature regarding record keeping, techni-

---

1. Plaintiff has the burden of establishing personal jurisdiction over the defendant.

2. Other firms incorporated in Delaware that have outstanding licenses under the patents in suit include: Diamond Shamrock Corporation, Esso Research & Engineering Company, Dow Chemical Company, U. S. Steel Corporation, Phillips Petroleum Company, Koppers Company, Monsanto Chemical Company, Shell Oil Company, Novamont Corporation, Goodrich-Gulf Chemicals, Inc.

cal assistance, visits, rights of inspection, grantback licenses, and policing. With respect to the last of these, Du Pont and Hercules have the right under certain of the licenses to suspend payment of royalties for failure by the licensor to prevent, by suit or otherwise, infringement by competitors. In 1969–70, Hercules suspended payment of royalties to Ziegler for failure to abate alleged infringement by Dart Industries. Ziegler subsequently brought suit against Dart in this Court on July 29, 1970, and SGK has recently been substituted as plaintiff in that proceeding.

■ Even assuming that the many contacts of Dr. Ziegler with his Delaware licensees[3] do not qualify as corporate "transaction of business" in Delaware by SGK under § 382,[4] when SGK acquired the patents in suit, there was no discontinuity in the ongoing business relationship with the licensees. In these circumstances, Kodak has adequately established that SGK is transacting business in Delaware. Compare, County Plumbing & Heating Co. v. Strine, 272 A.2d 340 (Del.Super.1970). Since October, 1973, SGK has held the rights and responsibilities of licensor in several lucrative license arrangements with licensees incorporated and having places of business in Delaware. Japan Gas Lighter Assoc. v. Ronson Corp., 257 F.Supp. 219 (D.N.J.1966), is closely analogous. In that case, Judge Coolahan found sufficient transaction of business by a foreign patentee based upon (1) the presence within the forum state of a licensee, (2) the retention by the licensor of significant power of supervision and verification of the licensee's records, (3) the provision of technical assistance and the communication of improvements to the licensee, (4) shared responsibility for suppressing infringement, (5) an agreement that the law of the forum was to govern the relations of the parties, and (6) the fact that the ties between licensor and licensee were "concretely embodied in a continuous stream of business correspondence, remittance of royalties, consultation in regard to present and possible future litigation, financial and technical assistance and other contacts which the agreement encompasses." 257 F.Supp. at 234. The relationships created by the license arrangements in this case are similar.[5] Surely, in the event of a dispute between SGK and a Delaware licensee over the terms of a license, personal jurisdiction over SGK would properly lie in this forum.

3. As part of the ongoing business relationship, Dr. Ziegler conducted a voluminous correspondence with his Delaware licensees on matters related to the patents in suit. Representatives of Du Pont and Ziegler met for business purposes at least 53 times, including 16 meetings in Delaware. Dr. Ziegler or his associates met with representatives of Hercules on at least 63 different occasions, including 15 meetings in Delaware.

4. In B & J Mfg. Co. v. Solar Industries, Inc., 483 F.2d 594, 598 (8th Cir. 1973), however, the court considered prior activities in the forum state by the defendant's assignor relevant to the transaction of business issue.

5. The two cases principally relied upon by defendant do not require a different conclusion. In Delaware Lead Const. Co. v. Young Industries, Inc., 360 F.Supp. 1244 (D.Del. 1973), it was established only that defendants had entered into two contracts with plaintiff, a Delaware corporation, and that one contract somehow involved "certain work" at a Delaware location; there was no showing of any activities by defendants in Delaware or of any continuing relationship or course of conduct in Delaware. In Hydraulics Unlimited Mfg. Co. v. B/J Manufacturing Co., 323 F.Supp. 996 (D.Colo.1971), aff'd., 449 F.2d 775 (10th Cir. 1971), the court refused to find personal jurisdiction based on a patent license, pursuant to which the foreign defendants had received substantial royalties from the local plaintiff, but the court added: "If other factors, such as extended negotiations, the defendants' presence, or substantial and related business activity in Colorado were shown, a different conclusion might be indicated." 323 F.Supp. at 1000. The license agreements in the instant case create many rights and responsibilities of defendant in Delaware beyond the right to receive royalties. See also, H. K. Porter Co., Inc. v. Gates Rubber Co., 177 U.S.P.Q. 302 (D.Colo.1972).

See, Japan Gas Lighter Assoc. v. Ronson Corp., 257 F.Supp. at 235. That being true, SGK is "transacting business" in Delaware under the meaning of § 382.

A more difficult issue is whether the present declaratory judgment action arises from business transacted by SGK in Delaware. Defendant asserts that it did not come to Delaware to charge plaintiff with infringement and did not communicate with plaintiff in Delaware to charge it with infringement. Furthermore, plaintiff has admitted that it engages in no commercial production of any polyolefin outside its plant in Longview, Texas. Defendant asserts, therefore, that any charge of infringement by SGK could not affect any activities of Kodak in Delaware.

■■ A declaratory judgment claim of patent invalidity arises "when a potential infringer is threatened with litigation and cannot compel the patentee to proceed." Uniroyal, Inc. v. Sperberg, 63 F.R.D. 55 (S.D.N.Y.1973); E. W. Bliss Co. v. Cold Metal Products Co., 137 F. Supp. 676 (N.D.Ohio 1955); I-T-E Circuit Breaker Co. v. McGraw Elec. Co., 121 F.Supp. 435 (E.D.Pa.1954). "The touchstone is a *reasonable apprehension.* There must be, in other words, some concrete indication that the defendant patentee claims the plaintiff's activity infringes his patent, and also that he will act affirmatively to enforce the protection which he claims." Japan Gas Lighter Assoc. v. Ronson Corp., 257 F. Supp. at 237. The only bases for an apprehended threat by defendant to plaintiff arguably related to Delaware are defendant's assertedly litigious conduct toward unlicensed competitors of plaintiff and the existence of license agreements in Delaware and elsewhere that obligate defendant to suppress infringement of the patents in suit.[6] With respect to the former, Kodak contends that when, at the behest of Hercules, a Delaware licensee, Ziegler sued Dart Industries in this Court for infringement, Kodak became the only unsued competitor of Ziegler's (now SGK's) licensees. In short, Kodak contends that the business SGK transacts in Delaware amounts to enforcement and protection of its patent rights, and this suit arises out of that business.

The "arising out of" requirement of § 382 has not been given as liberal an interpretation in this District as might be possible. A claim relating only generally to the non-resident's business in Delaware may not satisfy the "arising out of" requirement. La Chemise Lacoste v. General Mills, Inc., 53 F.R.D 596 (D. Del.1971), aff'd., 487 F.2d 312 (3rd Cir. 1973), involved rights to a trademark for toiletries, accessories, and all-weather coats. Judge Latchum found that even though a non-resident defendant had solicited orders for the sale of apparel, some of which may have borne the disputed mark, to stores in Delaware, because the defendant had not sold toiletries, accessories, or all-weather coats bearing the disputed emblem in Delaware, the "arising out of" requirement

---

**6.** Plaintiff's Response to Defendant's First Set of Interrogatories, Docket Item 10, states: "The basis for 'reasonable apprehension' was the totality of the circumstances that existed at least by the time suit was brought, including all of the following: (1) *defendant's institution of suit, by service of* a summons and complaint upon George Prendergast, an employee of plaintiff, on or about March 29, 1974, in the Eastern District of Texas, said complaint alleging infringement by plaintiff of defendant's (allegedly) U. S. Patent Nos. 3,113,115 and 3,-257,332; (2) the oral representation to Kenneth E. Madsen, counsel for plaintiff on May 1, 1974 by Arnold Sprung, counsel for defendant, that his client considered plaintiff to be infringing defendant's (allegedly) U. S. Patent Nos. 3,231,515 and 3,392,162; (3) the close causal relationship between the subject matter of U. S. Patent Nos. 3,-113,115 and 3,257,332, and that of U. S. Patent Nos. 3,231,515 and 3,392,162; (4) the occasional pressures applied by Ziegler and defendant to require plaintiff and others to enter into license agreements; (5) defendant's litigeous [sic] conduct toward unlicensed competitors of plaintiff; and (6) the existence of license agreements in Delaware and elsewhere that obligate or induce defendant to either license others or sue them.

was not met. See also Simpson v. Thiele, Inc., *supra*.

Whether the "arising out of" requirement is satisfied in the present case presents a close question. On the one hand, this declaratory judgment action is plainly related to SGK's business in Delaware. SGK has licensed the patents in suit to Delaware firms, has an obligation to its Delaware licensees to pursue infringers, and is presently suing an alleged infringer here under certain of the patents in suit. On the other hand, many of the factors considered important in determining where a patent declaratory judgment action arises are lacking here. Many courts have determined that a declaratory judgment action arises where the alleged infringer is located, receives the damaging charges of infringement, or suffers economic injury as a result of the charges. B & J Mfg. Co. v. Solar Industries, Inc., 483 F.2d 594, 598 (8th Cir. 1973); Uniroyal, Inc. v. Sperberg, 63 F.R.D. at 59 (analyzing the "claim arose" language of 28 U.S.C. § 1391); Dyform Concrete (Prestressed) Ltd. v. Spiroll Corp. Ltd., 370 F.Supp. 290 (D.Minn.1973); Minnesota Automatic, Inc. v. Stromberg Hydraulic Brake & Coupling Co., 309 F. Supp. 614 (D.Minn.1970); Didactics Corp. v. Welch Scientific Co., 291 F. Supp. 890 (N.D.Ohio 1968). None of these factors are present in this case. Kodak is not located in Delaware and did not receive a damaging charge of infringement here. Moreover, Kodak has alleged no economic injury sustained in Delaware as a result of any charge of infringement by SGK.

In only one case referred to by the parties was a patent declaratory judgment action found to arise in a forum where the alleged infringers were not located, received no threats, and, apparently, suffered no economic injury. In Japan Gas Lighter Assoc. v. Ronson, Corp., *supra*, the local licensee, which apparently held an exclusive license from its foreign licensor, had and exercised "the power to make damaging charges of infringement." 257 F.Supp. at 235. Judge Coolahan noted, moreover, that "there is no competing interest of another forum in which [the foreign licensor's] defense of its patent would be appreciably easier." *Ibid.* In the present case, the source of the assertedly damaging charges of infringement is not similarly concentrated in this forum. SGK's Delaware licensees do not have the power to make infringement charges. Four of the six grounds for Kodak's assertion of "reasonable apprehension" have no connection with Delaware.[7] Moreover, although SGK is obligated to Delaware licensees to pursue infringers, SGK has similar obligations to licensees outside of Delaware. The only ground for apprehension clearly limited to Delaware is the suit here against Dart Industries.[8] Although the Dart action may have threatened Kodak somewhat, the Court notes that it was only after SGK brought suit in the Eastern District of Texas, nearly four years after the Dart action was filed, that Kodak decided to file this declaratory judgment action. The Delaware nexus established in this case, thus, is more limited than that in the cases relied upon by the parties.

The close jurisdictional question need not be resolved here, because in any event, dismissal of this action is warranted pursuant to this Court's discretionary authority in declaratory judgment actions. Federal courts have discretion whether to grant relief in actions brought under the Declaratory

7. See text at note 6, *supra*.

8. There is some question whether prosecution of a suit in a forum can qualify as transaction of business. Dragor Shipping Corp. v. Union Tank Car Co., 361 F.2d 43, 49, n. 12 (9th Cir. 1966). For present purposes, however, this Court assumes that where, as here, a corporation's only business in the United States is enforcement of its patent rights and abating infringement, a patent infringement suit can be evidence of transaction of business.

Judgment Act, 28 U.S.C. §§ 2201–2202.[9] Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948); 1A Moore's Federal Practice ¶ 0.220 (2d ed. 1974). As Judge Latchum has recently noted,

> In deciding whether to exercise its discretion, the Court must consider the policies underlying the enactment of the Declaratory Judgment Act. Professor Borchard, the draftsman of the Act, has stated: "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." Borchard, Declaratory Judgments 299 (2d ed., 1941). Stamicarbon, N. V. v. Chemical Construction Corp., 355 F.Supp. 228, 232 (D. Del.1973).

In the present case, both policies articulated by Professor Borchard are better served by the parellel patent infringement action, Studiengesellschaft Kohle mbH v. Eastman Kodak Co., Civil Action TY–74–68, presently pending in the Eastern District of Texas.

■ The Texas action was filed by SGK six weeks prior to the complaint herein. Kodak has counterclaimed for a declaration of the invalidity of all of the patents in suit, and all of the issues in the Delaware action have been raised in the Texas proceeding. A Special Master has been appointed to supervise discovery there, and this Court is informed that discovery is proceeding. This litigation plainly has closer contacts to Texas than to Delaware. Kodak's pertinent operating division, Texas Eastman, and the accused infringing plant are located in Texas. Many of SGK's licensees have polyolefin plants in Texas,[10] and Texas appears to be a center of polyolefin manufacturing in the United States. No considerations of convenience of parties or witnesses relied upon by the parties in their arguments on the issue of transfer [11] suggest that this Court has a paramount interest compared to the Texas court.[12] Compare, Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U. S. at 185, 72 S.Ct. 219. In these circumstances, the Eastern District of Texas is a preferable forum, and the present action in Delaware serves no useful purpose in resolving the controversy between the parties. The Court, in the posture of this case, may dismiss the declaratory judgment action or stay the proceeding here pending the outcome of the Texas action. A stay seems to be a useless exercise in judicial gymnastics under the facts heretofore stated. Therefore, this Court in the exercise of its discretion determines that the best course is to dismiss this declaratory judgment action.

---

9. Section 2201 provides in relevant part:
   In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. [emphasis added].

10. Standard Oil of Indiana, Exxon, Phillips Petroleum, Diamond Shamrock, and Hercules.

11. Sprung Affidavits, Docket Items 30, 33; Madsen Affidavit, Docket Item 28.

12. Kodak contends, *inter alia*, that the present action should proceed because this Court, through related patent litigation, has gained familiarity with the complex technology involved. While familiarity with a complicated chemical art is a consideration of no little moment, the Court notes that the Fifth Circuit has already ruled on at least two of the patents in suit. Ziegler v. Phillips Petroleum Co., 483 F.2d 858 (5th Cir. 1973), cert. denied, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973).