**MILTON ROY COMPANY and MilRoy-Automated, Inc., Plaintiffs,**

v.

**BAUSCH & LOMB INCORPORATED et al., Defendants.**

Civ. A. No. 75–368.

United States District Court,
D. Delaware.

Aug. 9, 1976.

Edmund D. Lyons, Morris, James, Hitchens & Williams, Wilmington, Del., for plaintiffs; John J. Mackiewicz and Albert W. Preston, Jr., Woodcock, Washburn, Kurtz & Mackiewicz, H. Francis DeLone and Harvey Bartle, III, Dechert, Price & Rhoads, Philadelphia, Pa., of counsel.

Thomas S. Lodge, Connolly, Bove & Lodge, Wilmington, Del., for Bausch & Lomb Inc.; Ambrose Doskow and Joel W. Sternman, Rosenman, Colin, Freund, Lewis & Cohen, New York City, D. D. Allegretti and Edward W. Remus, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., of counsel.

Rodney M. Layton, Richards, Layton & Finger, Wilmington, Del., for Nat. Patent Development Corp., Flexible Contact Lens Corp., Flexible Contact Lens (Nevada), Inc. and Czechoslovak Academy of Science; C. Frederick Leydig, Paul L. Ahern, Leydig, Voit, Osann, Mayer & Holt, Ltd., Chicago, Ill., Chester C. Davis, David M. Disick and Marc J. Adelsohn, Davis & Cox, New York City, of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This case concerns the validity and enforceability of certain patents relating to the manufacture of so-called "soft contact lenses" ("soft lenses").[1] The patents at issue are owned by the Defendant Czechoslovak Academy of Sciences, which has exclusively sublicensed them to the Defendant National Patent Development Corp., which in turn sublicensed them to its subsidiaries, Flexible Contact Lens Corp. and Flexible Contact Lens (Nevada), Inc.[2] The National defendants in turn granted an exclusive sublicense to Defendant Bausch & Lomb, Inc. ("B & L"), as part of an agreement covering the exchange of techniques and

---

1. Soft lenses differ from "hard lenses" in that they are flexible enough to follow more closely the contours of the eye, and they are thus less likely to cause some kinds of eye irritation, and less likely to "pop out" while being worn.

2. For convenience these defendants (the Czech Academy, and the National Corporations) are herein referred to as "the National defendants" or simply "National".

the development and marketing of such lenses. The plaintiffs in the instant case, Milton Roy Company and MilRoy-Automated, Inc. ("MilRoy"), are corporations about to begin the manufacture and distribution of soft lenses under authority granted by the Food and Drug Administration. Mil-Roy brought the action seeking relief in the form of a declaration of invalidity or non-infringement of the patents.[3]

At the time this action was filed, there was pending in the United States District in Colorado a related action filed by B & L and joined by the National defendants against Automated Optics, Inc., which supplies plaintiff here with the material used to form the soft lenses (the "Colorado Action"). There are also pending actions in the Southern District of New York and the New York Supreme Court with regard to the contract between B & L and the National defendants ("New York actions").[4]

Presently before this Court are motions which relate solely to efforts of the defendants herein to determine which Court will rule on various aspects of the relationship of B & L with the National defendants. In both the Colorado action and this action, B & L has sought to invoke a cross claim against the National defendants, urging that the patents under which it is licensed to manufacture the lenses are invalid, or unenforceable for fraud. B & L continues to·urge in each case, however, that if the patents are valid and enforceable, then other manufacturers are infringing and should be enjoined.

The motions before the Court are the National defendants' motion to strike B & L's answer and to dismiss the three counts of B & L's counterclaim. Also pending is B & L's motion to require that the payments due under the National-B & L agreement be paid in escrow pending the outcome of the suit; and to forbid National from terminating the agreement between B & L and the National defendants, or committing any act inconsistent with B & L's alleged rights. The Court interprets this motion as praying for injunctive relief pursuant to Rule 65, Fed.R.Civ.Proc.

The issues were briefed by the parties, the Court heard oral argument, and requested each side to provide proposed findings of fact and conclusions of law. This opinion shall embrace any findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.Proc.[5] The issues are treated seriatim, the motions to strike and dismiss treated first.

### National's Motions

#### 1. Motion to Strike

National urges that B & L's answer ought to be stricken as "inappropriate" since it purports to answer that the three patents put in issue by MilRoy are in fact invalid or unenforceable. B & L urges that it is entitled to plead the facts which it believes to be the truth.

Motions to strike are generally not favored, and will not be granted unless some end of justice is accomplished thereby, even if, e. g., the defense raised is insufficient. *See Louisiana Sulphur Carriers v. Gulf Resources and Chem. Corp.,* 53 F.R.D. 458 (D.Del.1971). The Court is satisfied here that the admission of facts against the interest of a co-defendant does not bring an answer within the ground for striking per-

---

**3.** The patents which the plaintiff MilRoy has sought to have declared invalid or unenforceable are: United States Letters Patent 3,361,858 ("the '858 patent"); Reissue Patent 27,401 ("the '401 patent"); and United States Letters Patent 3,822,089 ("the '089 patent").

**4.** The Czech Academy is not presently a party in the New York State suit, but counsel for National has asserted it would join if it were required. The State action is under the B &

L-National agreement and seeks a determination of royalties. Counterclaims are pending there. The suit in the Southern District alleges a repudiation by B & L of the license and includes an anti-trust claim.

**5.** Rule 52 provides: "[I]n granting or refusing interlocutory injunctions the court shall  .  . set forth the findings of fact and conclusions of law which constitute the grounds of its action."

mitted by Rule 12(f), Fed.R.Civ.Proc.[6] Insofar as the pleading is an admission, it is an admission only against B & L, and cannot be used by the plaintiff to affect the interests of the National defendants. National's motion to strike the answer is therefore denied.

### 2. Motions to Dismiss

■ The standards for determining a motion to dismiss a counter-claim are the same as for determining a motion to dismiss a complaint. *See* Rule 12(b); 2A Moore's Federal Prac. ¶ 12.06[2] (2d ed.). All the relevant statements of fact contained in the counterclaim must be accepted as true, and the benefit of reasonable inferences given to the complainant. *Hospital Bldgs. Co. v. Rex Hospital,* 425 U.S. 738, 96 S.Ct. 1848, 49 L.Ed.2d 338 (1976).

■ The motions here are brought on jurisdictional grounds. National asserts that this Court lacks jurisdiction to determine the counts because they do not properly arise under 28 U.S.C. § 1338;[7] and that there is no case or controversy between B & L and National. Since the facts differ slightly as to each of the counts, they are dealt with separately. It should be noted at the outset, however, that only such jurisdiction as is granted by 28 U.S.C. § 1338, or by pendent or ancillary jurisdiction, *see United Mineworkers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), is available here. There is no diversity between B & L and National to save claims which might otherwise be brought under state law. It is also clear in this Circuit that the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is not a separate grant of jurisdiction. *See Schilling v. Rogers,* 363 U.S. 666, 677, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960); *Ragoni v. United States,* 424 F.2d 261, 264 (3rd Cir. 1970); *StamiCarbon, N. V. v. Chemical Const'n Corp.,* 355 F.Supp. 228, 232 (D.Del. 1973).

### A. Count I.

Count I of the B & L counterclaim is asserted to be brought under pendent and ancillary jurisdiction, and 28 U.S.C. § 1338. It recites that the '858, '401, and '089 patents are, in fact, invalid and unenforceable; and seeks a declaration to that effect. National urges that since B & L is a licensee, no claim of infringement can reasonably be made against it. Therefore on the face of the pleadings, there is no case or controversy. B & L replies that although it is indeed a licensee and it has not terminated the agreement, it was in fact accused of infringement in the case brought by National in the Southern District of New York.

Insofar as Count I is concerned, it is clear that the issue will be tried as to MilRoy's claims in any event. Therefore, since there is clearly a common nucleus of fact as to that claim under the pendent jurisdiction doctrine of *Gibbs, supra* the Court is satisfied that the Count may be maintained. The issue to be resolved is whether B & L may raise the issue, in light of its position as a licensee.

■ The standard in this District for determining whether a case or controversy exists in declaratory actions under the patent laws is whether the plaintiff or complainant has established a reasonable apprehension of an infringement claim. *See Eastman Kodak v. Studiengesellschaft Kohle,* 392 F.Supp. 1152 (D.Del.1975). Under the circumstances of the present case, the Court is satisfied that a case or controversy as to Count I exists.

■ First it is clear in this Circuit that under the doctrine of *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610

---

**6.** Rule 12(f) provides in pertinent part: "[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

**7.** 28 U.S.C. § 1338 provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

(1969), licensees need not repudiate or terminate their licenses prior to bringing suit. *See American Sterilizer v. Sybron Corp.,* 526 F.2d 542 (3rd Cir. 1975). National attempts to distinguish this case on the grounds stated by this Court in *Thiokol v. Burlington,* 313 F.Supp. 253; 319 F.Supp. 218 (D.Del.1970), *aff'd,* 448 F.2d 1328 (3rd Cir. 1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). That is, National asserts that while a suit may be brought by a licensee without termination, it is not a suit which is available to a licensee who is not accused of infringement and therefore cannot meet the test of the Declaratory Judgment Act, 28 U.S.C. § 2201.

It is not denied that B & L presently manufactures soft lenses, and that absent the license it would be an infringer if the patent is valid. It is also not denied that National and B & L are presently disputing the terms of their mutual agreement. The mere existence of the license relationship and the lack of direct accusation of infringement in this case is not enough for this Court to say that no case or controversy exists. It is clear that National intends to defend the patent, and that B & L has a reasonable apprehension of being accused of infringement. Moreover, as *Lear, supra,* made clear, B & L has a substantial economic stake in a determination of invalidity or non-infringement. The Court holds that the interest of B & L in continuing to manufacture the lenses without a license and the substantial and reasonable fear that if it cancelled the license, it would be sued on infringement establishes an actual controversy between the parties and is sufficient to establish the right to bring the declaratory action. *See Eastman Kodak v. SGK,* 392 F.Supp. 1152; *Thiokol II,* 319 F.Supp. at 221.

The motion to dismiss Count I of the counterclaim is therefore denied.

### B. Count II.

In Count II B & L urges that several additional patents, which are included in the agreement between National and B & L, are also invalid or unenforceable. National again asserts that no case or controversy actually exists as between the parties, and that in any event, jurisdiction is not properly in this Court under the *Thiokol* decision. B & L asserts that the claims may be brought under 28 U.S.C. § 1338 and that in any event they are ancillary to the *MilRoy* claims.

The Court cannot hold that the patents not raised by MilRoy are properly before this Court, on an ancillary or pendent basis. There appears to be no common nucleus of fact. Nor is it clear that within the discretion available under the *Gibbs* doctrine they are so closely related to the other patents as to be ancillary. This is especially true in light of the recent Third Circuit decision, *In re Frost Patent,* 540 F.2d 601 (3rd Cir. 1976). The fraud not connected with the '858, '401, and '089 patents would not appear to be necessarily a part of the circumstances which would require or lead to a declaration that those patents were invalid. *See In re Frost Patent, supra,* at 611.

Nonetheless, the Court is satisfied that jurisdiction as to Count II rests in this Court. As the Court has noted above, the financial stake of B & L and its reasonable apprehension of an infringement action as part of National's enforcement of its rights in the event it cancels the license provide a basis for it to seek a declaration of invalidity. The force and scope of the Declaratory Judgment action as a vehicle for the early determination of rights would be restricted unduly if it were held otherwise. *Cf., Eastman Kodak v. SGK,* 392 F.Supp. at 1158. And other important public policies would be ill served. *See American Sterilizer v. Sybron Corp.,* 526 F.2d 542 (3rd Cir. 1975).

Nor does *Thiokol* block the application here. In light of the *American Stemlizer, Co.* opinion, *supra,* it is clear that a licensee is entitled to sue in this Circuit without terminating the agreement. Since the allegations in the second count concern solely the claims of the patents and their validity, the action is one "arising under" the patent laws, and therefore is within 28 U.S.C. § 1338.

▮ The Court will, however, in view of the *Thiokol* decision, 448 F.2d 1328 (3rd Cir. 1971), stay any proceedings on Count II, since the patents at issue there are presently the subject of the action in the New York Supreme Court. As the Court reads the Third Circuit decision in *Thiokol,* the existence of concurrent jurisdiction in this Court and the state court gives rise to questions of comity, and the proper and efficient use of judicial resources. 448 F.2d at 1332.[8] This Court will not act to interfere with the progress of the New York state litigation which has been pending for some three years, absent a determination by that court that it will voluntarily yield to this Court's determination of the patent issues. 448 F.2d at 1332.

▮ B & L has urged that there is precedent in New York for the courts of that State to yield patent questions to the federal courts. *See Research Corp. v. Singer-General Precision Inc.,* 36 A.D.2d 987, 320 N.Y.S.2d 818 (3d Div. 1971). The fact that such a precedent exists is insufficient. Federal and State comity requires federal courts to stay their hand where the issue may more appropriately be dealt with by the existing state court remedy. *Cf., Huffman v. Pursue Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, (1975). *See Thiokol,* 448 F.2d 1332. Of course, B & L may request the New York Supreme Court to stay its determination, though as this Court has already made clear, it has full and complete confidence in the ability of state court judges to determine patent issues in accordance with the applicable law. *See Thiokol II.*[9]

The motion to dismiss Count II is denied.

## C. Count III.

In Count III of its counterclaim, B & L attempts to assert the invalidity of the entire agreement or "package" which it has with National. Insofar as this Count asserts the invalidity of patents, it is subsumed by the decision of this Court *supra,* covering Counts I and II. Since the Count ought not to be read as a nullity, or mere duplicitous pleading, and because of certain types of relief which B & L seeks,[10] it would seem that the focus of this Count is not on the patents but on the enforceability of the agreement itself.

▮ The Court is satisfied that Count III must be dismissed. It is clear that the agreement as such does not arise under the patent laws, and would present issues of state law proper only in diversity. *See Thiokol, supra,* 313 F.Supp. at 256. Federal patent questions included in the contract suit may be determined here, if the New York Supreme Court chooses to yield. Even in that event, the state court will retain the questions of the enforcement of the contract, the only issues of the package not accepted by this Court under Counts I and II.

B & L urges strongly that the agreement presents a common nucleus of fact as to the patents. It does not. The allegations of the prior counts relate to National's patentee and to conduct before the Patent Office, e. g., whether the invention was anticipated in the prior art; or whether the patentee committed fraud on the Patent Office. Issues which relate to the contract or National's and B & L's conduct in the course of their agreement, do not affect the validity of the patents. Rather they relate

---

**8.** The jurisdiction provided by 28 U.S.C. § 1338 is exclusive as to suits arising under the patent laws. *See* note 7 *supra.* State courts may, however, determine patent issues which arise in the course of contract enforcement actions brought before them. *See Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); *Thiokol v. Burlington Ltd., supra,* 313 F.Supp. at 256.

**9.** ". . . [P]laintiff intimates that defendants' real purpose in deferring from an infringe-

ment action and merely suing in state court for royalties is to attempt to obtain a ruling that the patent is valid from a state court inexperienced in federal patent law and awed by the Patent Office's grant of the patent in suit. This Court refuses to adhere to any such uncomplimentary view of the capability of the Pennsylvania state courts . . . ." 319 F.Supp. at 222–23 (fn. omitted).

**10.** *See* Answer and Counterclaim at 8–9.

to the enforcement of the contract inter se the parties.

·The motion to dismiss Count III is granted.

### Escrow

B & L has sought by motion here to place its next quarterly payment under the contract with National in escrow. Two separate, but interrelated grounds, are urged. Although the parties asserted that if Count III were dismissed, there would be no need to rule upon this question, it is clear that the Court must nonetheless make findings, since the motion was in part for an injunction to restrain termination of· the agreement by National in the event of the payment being made in escrow or not at all.

B & L claims to be entitled to the return of such royalties as it pays following its allegation of the invalidity of the patent. *See Zenith Laboratories, Inc. v. Carter-Wallace, Inc.,* 530 F.2d 508 (3rd Cir. 1976). B & L admits that it seeks by this route to have security for any recovery of royalties to which it might be entitled upon a finding of invalidity.

▪ The Court does not see how this need for security differs from any asserted by a party for other prejudgment security. Strong showings of necessity must be made before the Court will order such security, assuming that Rule 64, Fed.R.Civ.Proc. does not apply. While it might well be within the power of the federal courts to grant such prejudgment relief, the Supreme Court has made clear that normally there is a great showing of hardship required. *Compare De Beers Consolidated Mines v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), *with United States v. First National City Bank,* 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965).

Here, no such showing has been made. ·The affidavit in the case establishes the present solvency of the defendant National. Pollak affidavit, Docket Item 39, ¶¶ 13, 14. The fact that the Czechoslovak Academy of Sciences is before this Court is sufficient to determine that if a judgment is rendered it will be obeyed. B & L has not shown otherwise, and disobedience to judgments will not be presumed. B & L has not borne the burden necessary for the relief it seeks.

▪ Moreover, insofar as the issues of escrow and cancellation relate to the entire package, they are properly before the New York State court and not this Court. B & L urges that *Lear* and its progeny establish a right on the part of licensee to be completely protected during pendency of the litigation. It is clear that under the case law, no one may require the licensee to pay royalties during the time when he attacks the validity of the patent. *Zenith v. Carter-Wallace, supra,* 530 F.2d 508 at 513. *See Lear,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610. The question of whether the contract may be cancelled if such royalties are withheld, however, is at least initially one of state law, and not federal policy. The New York Court stands open, and has already ruled on related issues. The licensee is fully protected insofar as the federal policy is concerned by his ability to choose. He may pay the royalties while attacking the patent, and upon proving invalidity, recover the amount paid since the allegation of invalidity. *Zenith, supra.* Or he may refuse to pay the royalties. *Id.* It is basic black letter law that an injunction requires a showing of both irreparable injury and lack of an adequate remedy at law. Neither irreparable injury nor lack of adequate remedy has been shown here.

The motion for an escrow or for an injunction to restrain cancellation or termina.tion of the contract is denied.

Submit order.