### The AUTOMATED QUILL, INC., Plaintiff,

v.

### Gerald CHERNOW, Barry Rothberg and William Engleman, d/b/a Modern Investment Company and Associated Computer Systems, Inc., Defendants.

### Civ. A. No. 77–K–998.

United States District Court,
D. Colorado.

Aug. 16, 1978.

---

Richard W. Gillespie, Thomas J. Cross, Jr., Englewood, Colo., for plaintiff.

John C. Mott, Zarlengo, Mott & Zarlengo, Denver, Colo., Kevin C. Haight, Lakewood, Colo., Roger D. Haagenson, Haagenson & Peacock, Fort Lauderdale, Fla., for defendants.

## ORDER OF DISMISSAL

KANE, District Judge.

Defendants' Chernow, Rothberg and Engleman, d/b/a Modern Investment Company, have moved to dismiss. Plaintiff is a Colorado corporation which licenses computer programs which it has developed. Defendant Associated Computer Systems, Inc. [ACS] is a Florida corporation with its principal place of business in Florida. Defendants Gerald Chernow, Barry Rothberg and William Engleman are co-partners doing business under the name of Modern Investment Company [MIC]; each is a citizen of the State of Florida.

Plaintiff and defendant MIC entered into a license agreement whereby plaintiff agreed to provide MIC with a non-exclusive license to use certain licensed computer programs. MIC expressly agreed that the original license agreement between it and plaintiff and the subject thereof was non-transferable. By terms of the agreement, MIC agreed not to grant any sub-license without making payment in the amount of $7,900 to plaintiff and providing plaintiff with a copy of an executed sub-license agreement within thirty days of execution of same. (MIC and ACS subsequently entered into a sub-license agreement which was approved by plaintiff.)

Plaintiff alleges that defendants expressly agreed not to use the software provided by plaintiff in any manner contrary to the terms of said agreements; and that both defendants have violated and continue to violate the agreement in that they have contacted potential customers of plaintiff and have transferred the software provided by plaintiff to third persons. Plaintiff claims that as a result of this breach it has been deprived of its right to direct the manner in which its product is marketed, etc.

Federal subject matter jurisdiction is premised on 28 U.S.C. § 1332 which provides:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or

value of $10,000, exclusive of interest and costs, and is between . . . citizens of different States . . .. 28 U.S.C. § 1332(a).

28 U.S.C. § 1332(c) provides: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . .."

In their motion to dismiss, defendants Chernow, Rothberg and Engleman, d/b/a Modern Investment Company, contend that this court lacks jurisdiction over the person of these defendants. They allege that they were served in the State of Florida, and that no valid basis for personal jurisdiction exists. The issue is whether this court is vested with *in personam* jurisdiction over these defendants.

Resolution of this question depends upon the application of the Colorado long-arm statute. C.R.S. 13–1–124 (1973) which provides:

(1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by agent, submits such person, and, if a natural person his personal representatives, to the jurisdiction of the courts of this state concerning any cause of action arising from: (a) The transaction of any business within the state . . ..

*International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), provides the guidelines for determining whether or not the assertion of personal jurisdiction is consistent with due process. There the court stated:

Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' 326 U.S. at 316, 66 S.Ct. 158.

The test, continued the court,

cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. *Id.* at 319, 66 S.Ct. 159.

Plaintiff contends, in its memorandum brief in reply to the motion to dismiss, that "defendants' main thrust relies on the fact that they were not physically present in the state of Colorado." Although this is a fact worthy of consideration, it is only one of many.

In support of its position, plaintiff submits that an analogous situation was presented in the cases of *Eastman Kodak Co. v. Studiengesellschaft Kohle,* 392 F.Supp. 1152 (D.Del.1975) and *Japan Gas Lighter Association v. Ronson Corp.,* 257 F.Supp. 219 (D.N.J.1966). These cases are clearly *not* analogous to the case at bar; they are in fact inapposite. In both cases the district courts of the states where the *licensees* were incorporated were attempting to obtain *in personam* jurisdiction over the licensor. In both cases requisite jurisdiction was found. The propriety of the State of Florida's exercise of *in personam* jurisdiction over the licensor-plaintiff in this case is not subject to serious question.

Specifically, the Delaware District Court, in *Eastman Kodak, supra,* noted that

[m]any of the license agreements provide that legal relations between the parties would be controlled by the law of Delaware. The license agreements created significant obligations of a continuing nature regarding record keeping, technical assistance, visits, rights of inspection, grantback licenses, and policing. . .

Since October, 1973, SGK has held the rights and responsibilities of licensor in several lucrative license arrangements with licensees incorporated and having places of business in Delaware. *Id.* at 1154–55.

In the *Japan Gas Lighter, supra,* case the plaintiff was bringing a patent infringe-

ment action against Ronson, a licensee of La-Nationale. La-Nationale was a Swiss corporation with its principal place of business in Geneva. In concluding that the New Jersey District Court had *in personam* jurisdiction over La-Nationale, the court determined:

(1) the presence within the forum state of a licensee, (2) the retention by the licensor of significant power of supervision and verification of the licensee's records, (3) the provision of technical assistance and the communication of improvements to the licensee, (4) shared responsibility for suppressing infringement, (5) an agreement that the law of the forum was to govern the relations of the parties, and (6) the fact that the ties between licensor and licensee were 'concretely embodied in a continuous stream of business correspondence, remittance of royalties, consultation in regard to present and possible future litigation, financial and technical assistance and other contacts which the agreement encompasses.' 392 F.Supp. at 1155.

The Program License Agreement in the case at bar contains several provisions worthy of note:

(1) that the software is the proprietary material of plaintiff;

(2) that no more than ten (10) copies of any licensed program may be in existence at any time without the prior consent of plaintiff;

(3) that the original and all copies of the licensed programs which are made by the licensee shall be the property of plaintiff;

(4) that prior consent of plaintiff is needed before the licensee can provide any licensed program to another; unless provided for under one of the enumerated circumstances;

(5) that the licensee could retain a licensed program for archive purposes, but only upon consent of plaintiff;

(6) that plaintiff would defend any action brought against licensee to the extent that it is based on a claim that any licensed program used within the scope of the license infringes a U. S. patent or copyright, provided that: (1) licensee gives licensor notice and (2) licensor has sole control of the defense and all negotiations for its settlement or compromise. (Certain other enumerated qualifications were made on this obligation to defend on the part of plaintiff.);

(7) that the agreement is to be governed by the laws of the state of Colorado.

Considerable supervision can be exercised by plaintiff over the licensing activities carried on by defendants within the State of Florida. It is also evident that plaintiff retains a proprietary interest in the software located in Florida. Lastly, plaintiff is obligated to defend patent and copyright infringement cases brought against its Florida-based licensees—the defendants in this case.

Defendants, in their motion to dismiss, allege that the license agreement was executed in the State of Florida; and that "the defendants did not, and have not, transacted any business in Colorado at any time material hereto and were never in Colorado during the negotiation of this contract."

In *Van Schaak and Co. v. District Court, Eighteenth Judicial District*, 538 P.2d 425 (1975), the Supreme Court of Colorado set forth the criteria for determining whether a court can exercise *in personam* jurisdiction pursuant to the state's long-arm statute.

From the *McGee* [*McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223] and *Hanson* [*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283] cases, three criteria can be said to define the present outer limits of *in personam* jurisdiction based on a single act: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the

forum state to make the exercise of jurisdiction over the defendant reasonable. 448 P.2d at 574, [*citing White Lumber Sales, Inc. v. Sulmonetti,* 252 Ore. 121, 448 P.2d 571.]

The adoption of this three-pronged test for *in personam* jurisdiction was reaffirmed by the Supreme Court of Colorado in *Tucker v. Vista Financial Corporation,* 560 P.2d 453 (1977). There the court held that:

> unless the level of defendant's activity is sufficient to make her 'present' in the forum state, there is no jurisdiction where the cause of action is unrelated to the forum state activities. *Id.* at 456.

The contention of plaintiff that defendants are relying on Colorado courts for protection in the event of patent or copyright infringement actions is jejune. These actions are no more likely to be filed in Colorado than in any other federal court in a district where one of plaintiff's licensees is located.

The mere existence of a contract executed by a Colorado resident is insufficient to confer personal jurisdiction over an absent non-resident defendant. *Hydraulics Unlimited Mfg. Co. v. B/J Manufacturing Co., Inc.,* 323 F.Supp. 996 (D.Colo.1971). This is exactly what plaintiff would have us base *in personam* jurisdiction on in this case. Defendants did not come into Colorado for either negotiations or execution of the licensing agreement in question; they did not initiate any activity peculiar to Colorado which was undertaken on defendants behalf; the licensing agreement in question was not issued in conjunction with any other Colorado activity; the defendants activities as licensees are not specifically directed to Colorado; there is no evidence that defendants maintain an agent within the State of Colorado, a place of business, employees, a bank account, any subsidiaries which do business within the state, exercise ownership over any real or personal property within the state, nor enter into any contract in the state or any contract to be performed within the state. It is only too evident that defendants have not personally availed themselves of the privilege of conducting activities in Colorado.

The exercise of jurisdiction over any of the defendants in this case would offend "traditional notions of fair play and substantial justice." Accordingly, this court finds that it is without jurisdiction over the defendants in this diversity action and that their motions to dismiss should be granted. It is therefore

ORDERED that this complaint and civil action are hereby dismissed.